Augustus L. Phillips, by his Guardian, vs. George L. Moor.

Penobscot.    Opinion March 8, 1880.

*Personal property.    Sale.    Delivery—when not required.*

Where the acceptance, by the vender of an offer for a lot of hay, is absolute and unqualified, the expression of a hope by him, that the vendee will pay a greater sum for it when hauled, does not vary the contract.

If a purchaser would retract an offer made by him for hay, on the ground that his offer was not seasonably accepted, he should notify the seller promptly of his intention so to do; otherwise he must be regarded as having waived all objection to the acceptance on that ground.

Where the terms of sale of any specific piece of personal property are agreed on and the bargain is struck, and everything the seller has to do about it is complete, and he has authorized the buyer to take it, the contract of sale becomes absolute without actual payment or delivery, and the property is in the vendee, and the risk of loss by accident devolves upon him.

If M purchase hay pressed by himself, the defence that the hay was not pressed and branded as required by R. S., c. 38, § 52, is not open to him on an action of assumpsit for the price of the hay.

On report.

Writ dated December 13, 1878. Assumpsit, on account annexed for hay.

Plea, general issue. "The case to be reported to the law court and a nonsuit or default to be entered as the court may order." The court to draw such inferences as a jury might.

The facts appear in the opinion.

*A. L. Simpson,* for the plaintiff.

*Barker, Vose & Barker,* for the defendant.

The correspondence in this case is not sufficient to take the case out of the operations of the Statute of Frauds. *Jenness* v. *Mt. Hope Iron Co.* 53 Maine, 22. The acceptance of the offer of defendant for the hay, was neither unconditional nor seasonable, *Ibid; Benjamin on Sales, c. 3, § 39; 8 Allen, 56; Eliason et als.* v. *Henshaw,* 4 Wheaton, 225; *Averill et al.* v. *Hedge,* 12 Conn. 424; *Taylor Renne,* 48 Barb. 615.

The burden is upon plaintiff to prove affirmatively, that the hay was properly pressed, as required by R. S., c. 38, § 52. *Buxton* v. *Hamblen,* 32 Maine, 448.

BARROWS, J.   Negotiations by letter, looking to the purchase by the defendant of a quantity of hay in the plaintiff's barn, had resulted in the pressing of the hay by the defendant's men, to be paid for at a certain rate if the terms of sale could not be agreed on; and in written invitations from plaintiff's guardian to defendant, to make an offer for the hay, in one of which he says: "If the price is satisfactory I will write you on receipt of it;" and in the other: "If your offer is satisfactory I shall accept it; if not, I will send you the money for pressing." Friday, June 14th, defendant made an examination of the hay after it had been pressed, and wrote to plaintiff's guardian, same day . . . "Will give $9.50 per ton, for all but three tons, and for that I will give $5.00." Plaintiff's guardian lived in Carmel, 14 miles from Bangor where defendant lived, and there is a daily mail communication each way between the two places. The card containing defendant's offer was mailed at Bangor, June 15, and probably received by plaintiff in regular course, about nine o'clock, A. M., that day. The plaintiff does not deny this, though he says he does not always go to the office, and the mail is sometimes carried by. Receiving no better offer, and being offered less by another dealer, on Thursday, June 20th, he went to Bangor, and there, not meeting the defendant, sent him through the post office a card, in which he says he was in hopes defendant would have paid him $10.00 for the best quality: "But you can take the hay at your offer, and when you get it hauled in, if you can pay the $10.00 I would like to have you do it, if the hay proves good enough for the price." Defendant received this card that night or the next morning, made no reply, and Sunday morning the hay was burnt in the barn. Shortly after, when the parties met, the plaintiff claimed the price of the hay and defendant denied his liability, and asserted a claim for the pressing. Hence this suit.

The guardian's acceptance of the defendant's offer was absolute and unconditional. It is not in any legal sense qualified by the expression of his hopes, as to what the defendant would have done, or what he would like to have him do, if the hay when hauled proved good enough. Aside from all this, the defendant

was told that he could take the hay at his own offer. It seems to have been the intention and understanding of both the parties that the property should pass. The defendant does not deny what the guardian testifies he told him at their conference after the hay was burned,—that he had agreed with a man to haul the hay for sixty cents a ton. The guardian does not seem to have claimed any lien for the price, or to have expected payment until the hay should have been hauled by the defendant. But the defendant insists that the guardian's acceptance of his offer was not seasonable; that in the initiatory correspondence the guardian had in substance promised an immediate acceptance or rejection of such offer as he might make, and that the offer was not, in fact, accepted within a reasonable time.

If it be conceded that for want of a more prompt acceptance the defendant had the right to retract his offer, or to refuse to be bound by it when notified of its acceptance, still the defendant did not avail himself of such right. Two days elapsed before the fire after the defendant had actual notice that his offer was accepted, and he permitted the guardian to consider it sold, and made a bargain with a third party to haul it.

It is true that an offer, to be binding upon the party making it, must be accepted within a reasonable time. *Peru* v. *Turner*, 10 Maine, 185; but if the party to whom it is made, makes known his acceptance of it to the party making it, within any period which he could fairly have supposed to be reasonable, good faith requires the maker, if he intends to retract on account of the delay, to make known that intention promptly. If he does not, he must be regarded as waiving any objection to the acceptance as being too late.

The question here is,—In whom was the property in the hay at the time of its destruction?

It is true, as remarked by the court, in *Thompson* v. *Gould*, 20 Pick. 139, that—"When there is an agreement for the sale and purchase of goods and chattels, and, after the agreement, and before the sale is completed, the property is destroyed by casualty, the loss must be borne by the vender, the property remaining vested in him at the time of its destruction;" *Tarling*

v. *Baxter*, 9 Dow. & Ryl. 276 ; *Hinde* v. *Whitehouse*, 7 East. 558 ; *Rugg* v. *Minett*, 11 East. 210.

But we think, that, under the circumstances here presented, the sale was completed, and the property vested in the vendee. The agreement was completed by the concurrent assent of both parties ; *Adams* v. *Lindsell*, 1 Barn. & Ald. 681 ; *Mactier* v. *Frith*, 6 Wend. 103.

In *Dixon* v. *Yates*, 5 Barn, & Adol. 313, PARKE, J., remarks (E. C. L. R. vol. 27, p. 92,) : "Where there is a sale of goods, generally no property in them passes till delivery, because until then the very goods sold are not ascertained ; but when, by the contract itself the vender appropriates to the vendee a specific chattel, and the latter thereby agrees to take that specific chattel, and to pay the stipulated price, the parties are then in the same situation as they would be after a delivery of goods in pursuance of a general contract. The very appropriation of the chattel is equivalent to delivery by the vender, and the assent of the vendee to take the specific chattel and to pay the price is equivalent to his accepting possession. The effect of the contract, therefore, is to vest the property in the bargainee."

The omission to distinguish between general contracts for the sale of goods of a certain kind and contracts for the sale of specific articles, will account for any seeming confusion in the decisions. Chancellor KENT, 2 Com. 492, states the doctrine thus : "When the terms of sale are agreed on and the bargain is struck, and everything that the seller has to do with the goods is complete, the contract of sale becomes absolute without actual payment or delivery, and the property and risk of accident to the goods vest in the buyer." That doctrine was expressly approved by this court in *Wing* v. *Clark*, 24 Maine, 366, 372, where its origin in the civil law is referred to. And this court went farther in *Waldron* v. *Chase*, 37 Maine, 414 ; and held that when the owner of a quantity of corn in bulk, sold a certain number of bushels therefrom and received his pay, and the vendee had taken away a part only, the property in the whole quantity sold, vested in the buyer, although it had not been measured and separated from the heap, and that it thenceforward remained in charge of the seller at the buyer's risk.

In the case at bar all the hay was sold.    The quality had been ascertained by the defendant.    The price was agreed on.    The defendant had been told that he might take it and had nothing to do but to send the man whom he had engaged to haul it, and appropriate it to himself without any further act on the part of the seller.

It is suggested in argument, though the point was not made at the trial, where the facts could have been ascertained, that there is no proof that the hay was properly pressed and branded according to statute requirements; and the case of *Buxton* v. *Hamblen*, 32 Maine, 448, is cited as an authority, upon the strength of which the plaintiff should be nonsuited.

If the point were fairly open to the defendant in this stage of the case, it must still be said that the defendant himself undertook to do the pressing, and did it; and if he did not do it properly, he cannot take advantage of his own wrong.

*Judgment for plaintiff.*

APPLETON, C. J., DANFORTH, PETERS and SYMONDS, JJ., concurred.