GREAT NORTHERN RY. CO. v. PHILADELPHIA & READING COAL &
IRON CO.

PHILADELPHIA & READING COAL & IRON CO. v. GREAT NORTHERN
RY. CO.

(Circuit Court of Appeals, Eighth Circuit.    March 14, 1917.)

Nos. 4760, 4761.

1. WHARVES ⬡⚊9—LEASE OF COAL DOCK—CONSTRUCTION.
   A provision in a lease of a coal dock that on its expiration the lessor
   should take and pay for, at a fair valuation, "all the machinery and ap-
   paratus" placed and used on the premises with the lessor's consent, *held*
   to include within its meaning all appliances and structures, although of a
   permanent character, so placed on the dock with the lessor's consent.
   [Ed. Note.—For other cases, see Wharves, Cent. Dig. §§ 4, 5.]

2. APPEAL AND ERROR ⬡⚊1011(1)—REVIEW—FINDINGS OF FACT.
   A finding of fact made by a trial court on conflicting evidence is
   presumptively correct, and will not be disturbed, in the absence of serious
   mistake in the consideration of the evidence or error in the application
   of the law.
   [Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3983–
   3988.]

3. DAMAGES ⬡⚊68—BREACH OF CONTRACT—INTEREST.
   A lease of a coal dock provided that on its expiration the lessor should
   take and pay for, within 30 days, at a fair valuation, all machinery and
   apparatus placed on the premises with its consent.    On expiration of the
   lease the parties were widely divergent in their estimates of the value of
   such property, and an attempt at arbitration having failed, the lessee
   brought a suit in equity, in which, without objection, the question was liti-
   gated.    *Held* that, while the suit was in equity, complainant's demand was
   a purely legal one for breach of contract, and within the general rule that
   interest was not recoverable until the amount was liquidated by the
   decree.
   [Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 141–143.]

Appeal from the District Court of the United States for the Dis-
trict of Minnesota; Page Morris, Judge.

Suit in equity by the Philadelphia & Reading Coal & Iron Company
against the Great Northern Railway Company.    Decree for com-
plainant, from which both parties appeal.    Modified on defendant's
appeal, and affirmed.

S. H. E. Freund, of St. Paul, Minn., and Oscar Mitchell, of Du-
luth, Minn. (E. C. Lindley, of St. Paul, Minn., and A. McC. Wash-
burn, of Duluth, Minn., on the brief), for Great Northern Ry. Co.

M. H. Boutelle, of Minneapolis, Minn. (A. M. Higgins, of Minneap-
olis, Minn., on the brief), for Philadelphia & Reading Coal & Iron Co.

Before CARLAND, Circuit Judge, and RINER and MUNGER,
District Judges.

CARLAND, Circuit Judge.    On February 1, 1890, the Eastern Rail-
way Company of Minnesota leased to the Silver Creek & Morris
Coal Company dock No. 6, located in Superior, Douglas county, Wis.,

for the term of 10 years, with the privilege to the Coal Company to renew the same for a further period of 10 years. The lease contained the following provision:

"Said Railway Company covenants and agrees that upon the expiration of the lease hereunder, without default or breach on the part of the lessee, it will take all the machinery and apparatus on the premises demised, established, and operated thereon from time to time with its approval and consent, and within 30 days thereafter pay said Coal Company therefor on the basis of a fairly appraised valuation, which, if it cannot be agreed upon between the parties hereto, shall be determined by an arbitrator, if one can be promptly agreed upon, or otherwise by three competent and disinterested arbitrators, selected in the customary manner, whose decision shall be conclusive and binding: Provided, that the foregoing covenant shall not be binding upon said Railway Company unless said Coal Company shall have given said Railway Company notice in writing not less than 6 months, nor more than one year, before said expiration, of its desire that said Railway Company should so take said machinery and apparatus. And it is agreed that after such notice said Railway Company shall have a right to take said machinery and apparatus on the terms above set forth."

The Great Northern Railway Company is the successor of the Eastern Railway Company in the ownership of the leased premises. The Philadelphia & Reading Coal & Iron Company is the successor of the Silver Creek & Morris Coal Company. At the expiration of the lease the Reading Company and the Great Northern could not agree upon the valuation of the machinery and apparatus on the demised premises and an attempt at arbitration proved abortive. Thereupon both parties agreed that the Reading Company should surrender possession of the leased premises together with the machinery and apparatus established thereon to the Great Northern, with the understanding that such surrender should not work a forfeiture of the rights of the Reading Company under the paragraph of the lease above quoted, but that an action should be commenced by it for the purpose of establishing the fair value of the machinery and apparatus surrendered. In pursuance of such understanding this suit was instituted. It was brought as an action in equity and has been prosecuted as such without objection. The trial court decreed the value of such property to be $37,500, allowed interest thereon at 6 per cent. from the date of the filing of the bill, which was March 19, 1914, and also established a lien on the leased premises for the amount of the decree. The Great Northern appeals generally, and the Reading Company as to the question of interest. We will first consider the appeal of the Great Northern.

Assignments of error Nos. 1, 2, and 3 relate to the exclusion of evidence. In this connection we call attention to the provisions of equity rule 46 (198 Fed. xxxi, 115 C. C. A. xxxi), prescribed for the District Courts by the Supreme Court November 4, 1912. The rule provides:

" * * * When evidence is offered and excluded, and the party against whom the ruling is made excepts thereto at the time, the court shall take and report so much thereof, or make such a statement respecting it, as will clearly show the character of the evidence, the form in which it was offered, the objection made, the ruling, and the exception. If the appellate court shall be of opinion that the evidence should have been admitted, it shall not reverse the decree unless it be clearly of opinion that material prejudice will result

from an affirmance, in which event it shall direct such further steps as justice may require."

No attempt was made to comply with the requirements of the rule mentioned by court or counsel, and the assignments of error might be disregarded for that reason. We have examined the errors complained of, however, and we are not clearly satisfied that material prejudice would result in affirming the ruling of the trial court; for instance, the testimony sought to be elicited from the witness Fellows, and which is assigned as error in assignment No. 1, was received without objection from the witness Somershield.

Assignments of error Nos. 2 and 3 relate to the refusal of the court to permit the witnesses Fellows and Somershield to testify as to the cost of handling coal on and off the dock with the machinery and apparatus now in controversy. This evidence, standing alone, was irrelevant, unless, perhaps, the cost was to be compared with the cost of some other and different kind of machinery and apparatus, and no such offer was made.

The fourth assignment of error complains that the trial court erred in refusing to hold and decide that the basis of a fairly appraised valuation of the property was the value of the machinery and apparatus at the expiration of the lease as a coal handling plant. There is nothing whatever in the record to show that the court valued the plant for anything else than a coal handling plant.

The fifth assignment of error complains that the court erred in holding and deciding that by the terms of the lease the Great Northern was bound to purchase the machinery and apparatus which had been installed and established upon the dock, without regard to its operative efficiency at the date of the expiration of the lease. The record before us does not show that the court did not take into consideration the operative efficiency of the machinery and apparatus. The finding as to the value was a general one. The Great Northern introduced evidence upon this subject without objection, and in the absence of any showing to the contrary we must presume that the court considered it. Discussion between court and counsel during the trial cannot control the final judgment. Both sides introduced evidence touching the fair value of the property in controversy, but the court did not adopt the evidence of either side.

Assignment of error No. 6 complains that the court limited its finding as to the value of the property to the cost of reproduction of the various pieces of machinery, less a percentage for depreciation from deterioration of material, and without further allowance for depreciation due to obsolescence and comparative loss of efficiency through age. There is evidence in the record of the value of the property as compared with modern machinery, and the testimony introduced by the Great Northern was to the effect that it was worth little or nothing; one witness claiming that all the property situated on the dock, which in 1910 received a tonnage of 30,544 tons of hard and 10,390 tons of soft coal, was worth nothing. The court could hardly be expected to follow this evidence in making up its judgment, as the answer of the Great Northern admitted the value to be $5,000. The value placed

upon the machinery and apparatus by the trial court was about half of the lowest figure placed upon it by the evidence of the Reading Company. The court no doubt found the value to be not as low as claimed by the Great Northern nor as high as claimed by the Reading Company. The finding was a general finding and we must assume that the court considered all the evidence in the record.

[1] Assignment of error No. 7 relates to the same subject. Assignment No. 8 complains that the court erred in holding and deciding that the trestles and cable system of the Mead apparatus, the wooden understructure of the same, the tracks and wooden understructure of the Brown hoists, the anthracite coal pockets, and other permanent structures were included within the meaning of the terms "machinery and apparatus" as contained in the lease. We are of the opinion that the words referred to fairly included all appliances which the lessee with the consent of the lessor placed upon the dock, and therefore hold that there was no error in the court ruling as it did upon this subject.

[2] Assignment of error No. 9 relates to the same subject. Assignments Nos. 10 and 11 have no merit. Assignment No. 12, to the effect that the court erred in finding the value of the property in the amount of $37,500, has no merit. The amount was arrived at by the trial court upon the consideration of conflicting evidence, and there is substantial evidence to sustain it. It is presumptively correct, in the absence of serious mistake in the consideration of the evidence, or error in the application of the law, and we find no such mistake or error to exist.

[3] The other assignments of error relate to the allowance of interest. Counsel for the Great Northern claim that the court erred in allowing interest at 6 per cent. from the date of the filing of the bill. It is urged that, as the damages were unliquidated, no interest could be allowed prior to the date of the decree. Counsel for the Reading Company on its appeal claim that the court below erred in failing to decree interest from December 1, 1910, being 30 days from the date of the expiration of the lease. The claim of the counsel for the Reading Company is based upon that part of the excerpt from the lease hereinbefore quoted which provides that the lessor, within 30 days after the expiration of the lease, will take and pay for all the machinery and apparatus on the premises demised on the basis of a fairly appraised valuation.

The question of the allowance of interest has been exhaustively argued in the briefs of counsel on both sides, but we are of the opinion that the question of the allowance of interest on the record before us is not so difficult as counsel would seem to make it. While this action has been prosecuted as an action in equity, we must not lose sight of the fact that the demand of the Reading Company against the Great Northern is purely a legal one. There is no contract between the parties, express or implied, that interest shall be paid, prior to the ascertainment of the value of the property. It is true the lease provided that the value of the machinery and apparatus should be paid within 30 days after the expiration of the lease, but it appears beyond dispute that the parties could not agree upon this value, and that the attempt

of the arbitrators to agree failed, whereupon both parties found it necessary to institute a proper proceeding in court for the purpose of establishing the value. The value that has been established by the decree below was greater than the Great Northern thought it ought to pay, and much less than what the Reading Company demanded. The general rule is that no interest can be recovered for the breach of a contract, where the damages are in their nature unliquidated and there is no reasonably certain standard by which the amount can be determined until the amount has been ascertained. Gray v. Central R. R., 157 N. Y. 483, 52 N. E. 555; Mansfield v. New York Cent. Ry. Co., 114 N. Y. 331, 21 N. E. 735, 1037, 4 L. R. A. 566; White v. Miller, 78 N. Y. 393, 34 Am. Rep. 544; Laycock v. Parker, 103 Wis. 161, 79 N. W. 327. Many other cases could be cited in support of this rule.

The general rule is not open to controversy, but there is an exception to it in cases where the unliquidated claim is subject to an exact computation by reference to available data, or where the amount is subject to reasonably certain calculation by reference to existing market values. Wright v. City of Tacoma, 87 Wash. 334, 151 Pac. 837; Laycock v. Parker, 103 Wis. 161, 97 N. W. 327. We are of the opinion that this case comes within the general rule, and not within the exception. The claim of the Reading Company against the Great Northern does not depend for its existence upon any principle of equity jurisdiction; therefore the trial court had no discretion to allow interest as a matter of equity and as a part of the relief granted.

The decree below should be modified, so as to allow interest from the date of the decree, and, as thus modified, should be affirmed; and it is so ordered.

On the appeal of the Reading Company, we affirm the decree below, as modified on the appeal of the Great Northern Company.