## MILLIKEN–TOMLINSON CO. v. AMERICAN SUGAR REFINING CO. *

(Circuit Court of Appeals, First Circuit. November 25, 1925.)

No. 1825.

1. **Sales ⬳1(4)—Contract for purchase of sugar held not too indefinite to be enforced.**

Contract to buy sugar, "Assortment to be furnished to seller by buyer before September 1, 1920, but subject to such substitutions as seller may find necessary to make," made "subject to acceptance by" seller, *held* not too indefinite as to assortments to be delivered, and as to nature of acceptances necessary, to be enforceable.

2. **Contracts ⬳176(1)—Where terms of contract are beyond dispute, construction is question for court.**

Where terms of contract are beyond dispute, construction is question for court.

3. **Contracts ⬳9(1)—Disagreement as to effect of terms of contract does not preclude existence of valid contract.**

That parties, or courts, may disagree as to legal effect of terms of contract, does not preclude existence of valid contract.

4. **Contracts ⬳22(1)—Written offer does not require written acceptance.**

Written offer does not require a written acceptance to create valid contract.

5. **Frauds, statute of ⬳115(3)—Statute satisfied, if party sought to be charged has evidenced agreement by memorandum signed by him.**

Statute of frauds is satisfied if party sought to be charged has evidenced agreement by memorandum signed by him.

6. **Sales ⬳23(3)—Seller's confirmations of contract to purchase sugar held not to constitute acceptances required by contract.**

Seller's confirmations of contract to purchase sugar *held* not to constitute signed acceptances.

7. **Sales ⬳23(4) — Variation between orders for sugar and confirmations by seller held immaterial.**

That seller's confirmations of orders for sugar contained words, "option of routing reserved to seller," not found in orders, *held* not a

*Rehearing denied 10 F.(2d) 973.

material variation, making confirmations new offers.

**8. Sales ☞23(4)—Variation between confirmations and orders for sugar as to grade and quality held not material.**

That seller's confirmations of orders for sugar omitted trade-name "Domino granulated" and abbreviation "lg" before the words "barrels or equivalent," contained in orders *held* not a material variation, making confirmations new offers.

**9. Sales ☞23(4)—Variation between seller's confirmations and orders held not so material as to make confirmations new offers.**

That confirmations of orders for sugar contained words "Basis 22.50" and "Terms cash less 2% 7 days and f. o. b. Boston," not found in orders, *held* not sufficiently material to make confirmations new offers.

**10. Contracts ☞20—An offer, not specifying time within which it may be accepted, must be accepted within reasonable time.**

An offer, not specifying time within which it may be accepted, must be accepted within reasonable time.

**11. Contracts ☞29—What constitutes reasonable time within which to accept offer is ordinarily question for jury.**

What constitutes reasonable time within which to accept offer is ordinarily question for jury.

**12. Sales ☞50 — Buyer, accepting as sufficient confirmations of orders, may not urge others, similarly received, came too late.**

Buyer, having accepted as sufficient confirmations of orders for sugar, cannot urge that other confirmations, received at same time and after lapse of same period, were not received within a period which could fairly be supposed to be reasonable.

**13. Sales ☞50 — Buyer held to have waived rights to insist that confirmations of orders were not good acceptances thereof.**

Buyer, having elected to treat five of eight confirmations of orders as good acceptances thereof, *held* to have waived any rights which it might have had to insist that such confirmations were not good acceptances of the remaining orders.

**14. Fraud ☞11(1)—Assertion of belief or opinion in bad faith actionable.**

Fraud may consist in asserting a belief or opinion, if made in bad faith, with design or intent to deceive.

**15. Contracts ☞99(3)—Party alleging fraud vitiating contract has burden of establishing it.**

Party alleging fraud as grounds for setting aside contract has burden of establishing it by clear and convincing proof.

**16. Monopolies ☞17(1)—Sales ☞48¾, New, vol. 16A Key-No. Series—Contracts for sale sugar held not unenforceable, under state statutes relating to monopolies and contracts for unreasonable increase in price of necessaries of life.**

Contracts for sale of sugar *held* not void and unenforceable, as violative of St. Mass.

1908, c. 454, § 1, and St. Mass. 1919, c. 298, 1, declaring illegal any contract in violation of common law, by which monopoly is created, and declaring it unlawful to unreasonably increase price of any necessary of life.

**17. Monopolies ☞23—Seller, whose existence or operations offend anti-trust laws, may nevertheless recover on collateral contract for sale of its product.**

A seller, whose existence or operation offends anti-trust laws, may nevertheless recover on contract for sale of its product not inherently unlawful, but only collateral to illegal purpose.

**18. Sales ☞48¾, New, vol. 16A Key-No. Series—Contracts for future delivery of sugar at fixed price not illegal, as tending to unreasonably increase price of that commodity.**

Contracts for purchase of sugar for future delivery at a fixed price are not illegal, under St. Mass. 1919, c. 298, § 1, as tending to unreasonably increase price of that commodity.

**19. Frauds, statute of ☞112—Contracts for sale of sugar held sufficiently definite as to price to satisfy statute of Maine or Massachusetts.**

Contracts for purchase of sugar in "barrels or equivalent" at a price per barrel, when considered with trade custom and fixed differentials for different sized packages, *held* sufficiently definite, in respect to price, to satisfy requirements of statute of Maine or Massachusetts.

**20. Sales ☞172—Seller held not in default for failure to make tender of delivery.**

Where contracts of purchase of sugar in "barrels or equivalent" provided, "Assortment to be furnished to seller by buyer before September 1, 1920, * * *" *held*, seller was not in default for failure to make tender of delivery, where buyer entirely failed to give notice of assortment desired.

**21. Sales ☞384(1)—Manner of computing damages in action on contract for sugar stated.**

In action on contracts to purchase sugar in "barrels or equivalent," which reserved to buyer right to designate assortment desired, but buyer never made such designation and repudiated contract, plaintiff seller *held* entitled to have damages computed on basis of barrels of granulated sugar, rather than on barrels of powdered or cube sugar which weighed materially less.

**22. Sales ☞384(1)—Seller of sugar held entitled to interest on recovery for buyer's breach of contracts.**

Seller, suing on contracts to purchase sugar, *held* entitled to interest on recovery from date of buyer's breach of contracts.

Bingham, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Maine; John A. Peters, Judge.

Action by the American Sugar Refining Company against the Milliken-Tomlinson Company. Judgment for plaintiff, and defendant brings error. Affirmed.

Albert S. Woodman, of Portland, Me. (Woodman, Whitehouse & Littlefield, of Portland, Me., on the brief), for plaintiff in error.

William R. Pattangall, of Augusta, Me., and J. F. Abbott, of New York City (Pattangall, Locke & Perkins, of Augusta, Me., Leon V. Walker and Verrill, Hale, Booth & Ives, all of Portland, Me., and Hull, Abbott & Carpenter, of New York City, on the brief), for defendant in error.

Before BINGHAM and JOHNSON, Circuit Judges, and BREWSTER, District Judge.

BREWSTER, District Judge. This is an action of contract brought by the American Sugar Refining Company, defendant in error (hereinafter referred to as the plaintiff), against Milliken-Tomlinson Company, plaintiff in error (hereinafter referred to as the defendant).

The plaintiff seeks to recover damages for breach of alleged contracts whereby defendant agreed to accept and pay for 500 barrels of sugar, to be delivered and accepted during the month of September, 1920. Numerous defenses were set up in defendant's "brief statement to be used under the general issue." These defenses may conveniently be divided into three classes: First, those that deny the existence of the contracts; second, those that admit the existence of the contracts, but deny their validity; and, third, those that assume valid contracts but allege excuses for nonperformance. A demurrer to certain of the defenses of the second class was sustained in the District Court. The case was tried with a jury. The trial judge ruled that the defendant had made out none of the remaining defenses, and instructed the jury to determine only the date of the breach and the amount of damages. The principal questions calling for consideration are whether the court erred in sustaining the demurrer and whether, on the evidence presented, the case should have been submitted to the jury on other issues raised by the pleadings. These questions require a somewhat extended consideration of a voluminous record and an examination into the several defenses relied upon and the law applicable thereto. Many of the defenses with which the defendant has opposed plaintiff's claim are strikingly similar to those interposed to like suits in other jurisdictions, some of which have been prosecuted to the courts of last resort.

Briefly, the undisputed facts, so far as material to the present inquiry, may be thus stated: The plaintiff is a refiner of sugar and the defendant a wholesaler. Early in June, 1920, one Johnstone, a representative of the plaintiff, told the defendant that he (Johnstone) had been allotted a certain quantity of sugar for his customers, among whom was the defendant, that he could sell the defendant sugar for delivery during the months of July, August, and September, 1920, at 22½ cents per pound, and that it would be necessary for the defendant to sign written orders in order to get the sugar. Defendant was at first unwilling to sign orders for future delivery at a fixed price, at least beyond July, but a few days later he signed written orders for 300 barrels to be delivered in July, 300 barrels to be delivered in August, and 200 barrels to be delivered in September. Later in the month Johnstone again advised defendant of another and further allotment which had been provided for his trade, and invited defendant to participate. Again, after some delay, defendant signed orders for 100 barrels to be delivered in July, 100 barrels to be delivered in August, and 300 barrels to be delivered in September. In each instance four (4) copies of the orders were signed by defendant, one of which was designated "Customer's Copy." All four copies were taken and mailed by Johnstone to the plaintiff's Boston office. The customer's copies were returned to defendant about June 25, 1920. Plaintiff's action is based upon three of these orders, calling for delivery in September, 1920. One is dated June 2, 1920, and covers 200 barrels; one is dated June 8, 1920, for 200 barrels; and the third is also dated June 8, 1920, and is for 100 barrels. The orders were identical in terms, except as to dates and quantity of sugar, and one other detail to be noted hereafter. They read as follows:

"The American Sugar Refining Company, "117 Wall Street, New York.

"Order No. ————.
"United States Food Administration License Number: F–0241.
"Date: June 8, 1920.
"Salesman's Order No. ————.
"District No. ————.
"Ship to
"Sold to Milliken, Tomlinson Co.
"Address
"Address No. 303 Commercial Street.
"Subject to *Acceptance by A. S. R. Co.,* delivering carrier, Portland, Maine.
"Delivery complete on receipt of goods by carrier. Seller's ruling freight basis on day of shipment. This purchase to be in-

voiced and paid for at contract price. No allowances will be made for declines in market. This contract contingent on strikes, accidents, fire or other delays beyond seller's control. All additional import duties, excise or other taxes hereafter levied on the raw or refined sugar necessary to fill this contract at buyer's expense in addition to price specified.

| Containers. | Cases. | Sacks. | Bags. | Half Bbls. | Kind Bbls. | Pkgs. | Grade. | Pounds. | Price. | Amount. |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | | Domino Granulated | | | | | |
| | | | | | 200 lg barrels or equivalent | | | | 22.50 | |

"Assortment to be furnished to seller by buyer before September 1, 1920, but subject to such substitutions as seller may find necessary to make. In event assortment is not furnished promptly, seller reserves right to ship such grades as it has available at time of shipment. Delivery to be during September or as soon thereafter as is possible, and buyer will accept delivery when made by seller. Seller is to have option of making delivery from any of its refineries. All transportation charges to be for the account of buyer.

"Subject to rules and regulations of any government department at the time of shipment or delivery.

"United States Food Administration license No. G:13891."

According to the course of dealings between the parties which obtained during the summer of 1920, the defendant would telephone its assortments for whatever sugar it wanted, and would send its trucks to the plaintiff's warehouse in Portland, where the deliveries would be made. The first assortment was furnished July 12, 1920, and from time to time thereafter the sugar, covered by the orders for July and August deliveries, was all ordered out. No assortments for the sugar to be delivered in September were ever furnished by the defendant, and on or about November 5, 1920, it first notified the plaintiff of its refusal to take the sugar under the three contracts declared upon in this action.

When the customer's copies, above referred to, were received by defendant about June 25, 1920, Mr. Laughlin, its president and manager, called Johnstone's attention to the fact that they were not signed by or on behalf of plaintiff, and that he expected and demanded a written acceptance. Mr. Johnstone said he would get confirmations of the orders. Confirmations of all contracts were received on or before July 15, 1920, but these bore no written signature of

the plaintiff, and again Mr. Laughlin complained that he had yet received no written acceptances binding upon the company, to which, as he claimed, the defendant was entitled. The confirmations in form were not in all particulars identical with the orders which they confirmed. These discrepancies are relied upon in defense to the action and will be referred to later.

Coming, now, to the several defenses which deny the existence of any contract between the parties, we find the defendant claiming (1) that there was no meeting of the minds of the parties; (2) that the terms of the contract were too indefinite to be enforced; (3) that defendant's offers to buy sugar were not duly accepted by plaintiff, since the acceptances (a) were not signed, (b) were not authorized, (c) were not unqualified, and (d) were not seasonable.

[1, 2] The first and second of these defenses may be treated together. As we understand defendant's claim, it is that the provisions in the contract relating to assortments to be furnished by the defendant and the terms "subject to acceptance by A. S. R. Co." are susceptible of two constructions; that, as the defendant construed these terms, the provisions respecting assortments conferred a privilege on defendant which it might exercise or not, as it chose, and did not carry any legal obligations; also that the word "acceptance" meant a written acceptance, and if it should now appear to the court that defendant had proceeded upon a misconception of the legal import of the terms of its written orders there was no contract, or at least no contract that can be enforced against it. When the terms of a contract are beyond dispute, it is for the court to say what legal consequences flow from them, and both parties are bound by the correct legal construction—whatever that may be. This is elemental. Sawyer v. Hovey, 3 Allen, 331, 81 Am. Dec. 659; Hotchkiss v. National City Bank (D. C.) 200 F. 287, 293; Williston on Contracts (1920) § 21.

[3] There may be—in fact, there have been —differences of opinion as to the constructions to be placed on language employed in the provisions of these orders. See American Sugar Refining Co. v. Blake et al. (Superior Court, June 6, 1920, overruled Conn. Supreme Court, April 3, 1925), 102 Conn. 194, 128 A. 523. But it does not follow that

there was no valid contract between the parties because individuals or courts have disagreed as to its legal effect.

The third defense above enumerated is in effect that the offers of the defendant were never accepted by the plaintiff so as to create binding agreements. The contentions of the defendant in respect to this defense are (1) that it was entitled to signed acceptances, duly authorized, and that it received no such acceptances; (2) that the plaintiff undertook to accept by mailing confirmations, which so far modified the terms of the offers as to amount to counterpropositions, which were never accepted by the defendant; and (3) that the acceptances, if there were any, came too late.

[4] As to the first contention, the orders expressly provided that they were "subject to acceptance" by plaintiff. These terms are not ambiguous. They did not require a signed acceptance. A written offer does not require a written acceptance in order to create a valid and binding contract. Sanborn v. Flagler, 91 Mass. 474; Pettibone v. Moore, 75 Hun. (N. Y.) 461, 27 N. Y. S. 455; Williston on Contracts (1920) 586.

[5] The statute of frauds is satisfied if the *party sought to be charged* has evidenced the agreement by a memorandum signed by him. Pettibone v. Moore, supra; Nickerson v. Bridges, 216 Mass. 416, 103 N. E. 939.

[6] There was, so far as the records show, no evidence of an express agreement on the part of the plaintiff to give to the defendant a written, signed acceptance. There was slight evidence of a general custom, or usage, requiring a seller to accept orders over his signature and in some past transactions the plaintiff had followed this practice. We agree with defendant that the confirmations were not, and were not intended by the plaintiff to be, signed acceptances. But in view of what we say hereinafter respecting the waiver by the defendant of all defects in the confirmations, it becomes futile to discuss whether the jury should have been permitted to find, if possible, from the evidence, that the plaintiff agreed to accept the offers by a writing duly signed.

[7] As to the second contention, it appears that the confirmations sent by the plaintiff and received by the defendant about July 15, 1920, varied in form somewhat from the orders. The variations worthy of consideration will be taken up. The confirmations contained the words "option of routing reserved to seller." The orders were silent as to route. The seller had a right to send by the usual route. Williston on Sales (2d Ed.) 924, § 586, and as both orders and confirmations contained the expression "Seller's ruling freight basis on day of shipment," the plaintiff was obliged to make shipment from Boston at a freight rate all rail as low as that of any of its competitors in that city. There was only one rail route between Boston and Portland. The added term, therefore, in this case, was entirely immaterial. Nor was the defendant prejudiced thereby because the sugar was, in fact, shipped by water at a rate lower than the lowest all rail rate to the plaintiff's warehouse in Portland, from which defendant received all its sugar.

[8] The orders under the caption "Grade" had the printed words "Domino granulated," and stamped under these words were the words "barrels or equivalent," and the number of barrels specified in the order was written against the words "barrels or equivalent," except in one case, obviously an error, where the number of barrels was written against the words "Domino granulated," and the abbreviation "lg" for "large" appears on the order before the word "barrel." In the confirmations, and they were all alike in this respect, only the words "barrels or equivalent" appear under the caption "Grade," and the number of barrels ordered without the letters "lg" was set before these words. It clearly appears from the record that both parties knew, and the custom of the trade required them to know, that defendant, when the orders were signed, was ordering barrels of fine granulated sugar of the average weight of 350 pounds each, or the equivalent thereof, in other kinds or packages of sugar, which would include sugar put out by the plaintiff under its trade-mark "Domino." No material term of the orders was left out by omitting the trade-name "Domino granulated," or the abbreviation "lg," in the confirmations.

[9] The confirmations contain the words "Basis 22.50," which do not appear in the orders. This difference has been held to be without substance in A. B. Small Co. v. American Sugar Refining Co., 267 U. S. 233, 45 S. Ct. 295, 69 L. Ed. 589, and calls for no further comment. The confirmations also contained the following words and abbreviations: "Terms cash less 2% 7 days and f. o. b. Boston." Inasmuch as the orders contained no provision as to time of payment and a provision that buyer was to pay transportation charges, these alleged differences invite the condemnation of the learned justice in Small v. A. S. R. Co., supra, where

he suggested that an equally unsubstantial difference approached a "mere quibble."

Regarding all of the relatively unimportant and immaterial discrepancies between the orders and the confirmations, it should be noted in passing that they appear to be present in eight orders, five of which were performed by defendant without any suggestion that the contracts were on that account invalid. It is obvious that the discrepancies have been unduly exaggerated by the exigencies of the case. In this case, as in the case of Small v. A. S. R. Co., supra, the orders and confirmations were both prepared by the plaintiff, and after they were received by the defendant both parties, in several ways, treated the orders as effectively accepted. Not until this action was brought was a variance suggested. As Mr. Justice Van Devanter points out in the Small Case: "In such circumstances a court should be solicitous to find, as the parties evidently did before they became hostile, an accord between the two instruments."

[10-12] But the defendant further urges that the acceptances were defective because not seasonably sent. It is well-settled law that, where the offer does not specify the time within which it may be accepted, it must be accepted within a reasonable time. What is a reasonable time ordinarily is for the jury to determine upon all the circumstances of the case. The trial judge evidently followed Phillips v. Moor, 71 Me. 78, which held that if one intends to take advantage of delayed acceptance he should make known his intention promptly, if the acceptance comes "within any period which he could fairly have supposed to be reasonable." Defendant suggests that Phillips v. Moor, supra, does not apply, because the confirmations did not come within a period which it could fairly have supposed to be reasonable; but this suggestion is completely answered by the fact that the defendant found them sufficient so far as they confirmed orders it desired to have filled.

[13] But the undisputed facts clearly show that defendant by its own conduct had waived whatever rights it had to treat the acceptances as defective in any particular. It had elected to treat these confirmations as good acceptances of the several orders, and it can not now be heard to say that its several offers were not accepted by plaintiff. It will be remembered that eight confirmations, confirming eight orders given by the defendant during June, were all received at one time. The defendant proceeded to take and pay

for sugar on five of these contracts, without once suggesting to any one representing the plaintiff that the confirmations came too late or were defective. It cannot be said that the defendant, after receipt of the confirmations, had the right to elect which of the contracts it would treat as valid and enforceable, and which it would treat as invalid and unenforceable, and maintain a strict silence as to its election. Its every act gave the plaintiff a right to assume, and to proceed on the assumption, that the orders had been duly and legally accepted. The circumstances of the case threw upon the defendant a duty to speak. Instead, it remained silent, and to its silence added positive acts which, taken together, are enough to preclude it from claiming after suit that as to the orders for September allotments they were not duly accepted.

We agree with plaintiff that the trial judge committed no error in his disposition of the questions raised by defendant relative to the existence of the contracts upon which this suit is brought.

We now come to the second group of defenses, namely, those that assail the validity of the contracts or the right of plaintiff to recover on them in this action.

The defendant claims that the contracts are void and unenforceable in this action because (a) they were induced by fraud; (b) they are void under anti-trust statutes of Massachusetts and at common law; and (c) that the statute of frauds is not satisfied.

Regarding the first of these defenses, it is defendant's claim that it was induced to sign the order by false representations made by plaintiff's agent to the effect that a shortage in sugar then existed, and that it was the opinion of the plaintiff that it would become more acute later in the year. The trial judge received evidence in support of these allegations and in his charge to the jury said:

"A large part of the testimony here relates to alleged false representations made by the plaintiff's agent or agents to the defendant. Now, I have disregarded many of the questions of fact that might otherwise have been up for your consideration, because it did not appear to me that all the necessary elements of false representation sufficient to invalidate a contract were present."

The question raised by the many assignments of error relating to this defense is whether the judge erred in thus withdrawing from the jury the issue of fraud. In order to dispose of this question, it has been neces-

sary to closely examine the record. It would not be possible to review here the evidence bearing upon this issue and keep this opinion within reasonable limits. It will be sufficient to state that a careful consideration leads us to the opinion that the learned trial judge was quite right in refusing to submit the question of fraud to the jury and to state briefly the reasons for that opinion.

[14] We are prepared to admit the soundness of the proposition of law which counsel for defendant have elaborately treated in their brief, to the effect that fraud may consist in asserting a belief, or an opinion, as well as asserting a fact, if the assertion is made in bad faith, with the design or intention to deceive. See Foster et al. v. Swasey, 9 Fed. Cas. 579, No. 4,984; Vulcan Metals Co. v. Simmons Mfg. Co., 248 F. 853, 161 C. C. A. 7; Stebbins v. Eddy, 22 Fed. Cas. 1192, No. 13,342; Seimer v. Jas. Dickinson Farm Mtge. Co. et al. (D. C.) 299 F. 651.

Judge Peters obviously followed the rule for testing the direction of a verdict lately reiterated in Small Co. v. Lamborn & Co., 267 U. S. 248, 45 S. Ct. 300, 69 L. Ed. 597. [15] He may well have had in mind also the rule, which finds support in federal courts, that, when one seeks to set aside a contract on the ground of fraud, the burden is upon the party alleging the fraud to establish it by clear and convincing proof. U. S. v. American Bell Tel. Co., 167 U. S. 224, 17 S. Ct. 809, 42 L. Ed. 144; Lalone v. U. S., 164 U. S. 255, 17 S. Ct. 74, 41 L. Ed. 425; Wigmore on Evidence (2d Ed. 1923) § 2489.

When we consider the evidence, as disclosed by the record, in the light of these well-established rules, it becomes apparent that it failed to come up to the required degree of proof. It would not warrant a jury in finding all the elements necessary to make out a case of fraud.

There appears no clear and convincing evidence that the statements made by Johnstone, plaintiff's agent, were made in bad faith, with knowledge of their falsity, or with any intent to mislead, and the only evidence tending to show that defendant acted upon these statements was, after cross-examination of defendant's president, left with little or no probative value. Furthermore, any statement of plaintiff regarding the condition of the sugar supply in the future was so inherently a prophecy or guess, depending upon so many contingencies beyond the control of the plaintiff, that it would seem well-nigh impossible to twist any such prognostication into a statement of fact, which, if not justified by events, could be held to be fraud. See Franklin Sugar Refining Co. v. Hanscom Bros., Inc., 30 Pa. Dist. R. 501 (affirmed 273 Pa. 98), 116 A. 140.

The undisputed evidence shows that the chief cause contributing to the unexpected abundance of sugar and the subsequent break in price was not foreseen by plaintiff.

[16] Defendant also attacks the validity of the contracts on the ground that they are in violation of the common law and the statutes of Massachusetts, which forbid monopolies, contracts, or conspiracies to restrain trade, or to unduly increase the price of the necessaries of life. In defendant's statement of defenses, it has set out in several different ways its claims in this respect. To all of these defenses the plaintiff demurred, and the District Court sustained the demurrer. Numerous errors are assigned as a consequence. Defendant alleges that the contracts were made within, and to be performed within, the commonwealth of Massachusetts. These allegations are not supported by the evidence, but both parties in the briefs appear to have assumed that the contracts were Massachusetts contracts. As the question is raised by demurrer, we have assumed, without deciding, that the contracts are Massachusetts contracts. Underlying all these assignments, then, the question is whether the contracts should be declared void under statutes of Massachusetts or at common law.

Two enactments of the Massachusetts Legislature are relied upon. St. 1908, c. 454, § 1, and St. 1919, c. 298, § 1. The former statute declares as against public policy, and therefore illegal and void, any contract in violation of the common law by which a monopoly is created in the manufacture, production, or sale in Massachusetts of any commodity in common use, or by which competition is restrained or prevented, or the free pursuit in any lawful business is restrained. This statute is simply declaratory of the common law. The latter statute is penal in its nature, but, by the terms of it, it is declared to be unlawful to maintain or increase unreasonably the price of any necessary of life. While this statute does not, in express terms, declare void a contract which has for its object the unreasonable increase or maintenance of the price of any necessary of life, it is the contention of the defendant that such a contract must of necessity be unlawful, and it invokes the long-established rule that a court will not lend its assistance in the enforcement of an illegal contract. McMullen v. Hoffman, 174 U. S. 639, 19 S. Ct. 839, 43 L. Ed. 1117.

[17] The federal courts have on several occasions considered contracts of sale made with a seller whose existence or operations offend anti-trust laws and the right of the seller to recover thereon has been upheld when it appeared that the contract was not inherently unlawful and was only collateral to the illegal purpose. The leading cases on this point are Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 22 S. Ct. 431, 46 L. Ed. 679, Wilder Mfg. Co. v. Corn Products Co., 236 U. S. 165, 35 S. Ct. 398, 59 L. Ed. 520, Ann. Cas. 1916A, 118, Small Co. v. Lamborn & Co., supra, Small Co. v. American Sugar Refining Co., supra, and Bell v. Lamborn (C. C. A.) 2 F.(2d) 205.

The defendant has undertaken to distinguish the case at bar from the Connolly Case and the Wilder Case, but these attempts fail when contemplated in the light of the more recent cases, which involved the validity of contracts substantially like those declared upon in this action. The principal ground upon which the defendant would distinguish this case from cases like Connolly v. Union Sewer Pipe, supra, and Wilder Mfg. Co. v. Corn Products Co., supra, is that plaintiff's contract of sale for future delivery at a fixed price was a direct means adopted by it in order to accomplish its alleged unlawful design, and should not be regarded as a collateral undertaking, even though the defendant as the other party to the contract was a stranger to the scheme. But the contracts of sale which were before the court in the cases of Wilder Mfg. Co. v. Corn Products Co., supra, and in Small Co. v. Lamborn & Co., supra, were no less a part of the alleged unlawful scheme than were the contracts in the case at bar—no less a step in the execution of the alleged unlawful purpose. In Small Co. v. Lamborn & Co., supra, the trial court sustained a demurrer to a defense based upon allegations of facts which went even farther than the allegations set out by the defendant here. In the United States Supreme Court this action was approved, and in the course of the opinion the court says:

"In substance, the defense was that the seller and others had entered into a combination to manipulate interstate trade in refined sugar with a view to increasing the price, that the contracts were made during the life of the combination, and that the seller conformed the terms of sale to standards sanctioned by the combination. There was no allegation that it was not the owner of the sugar, nor any allegation that the buyer was a party to the combination or other than a stranger to it. The contracts disclosed the full transaction between the seller and buyer, and contemplated that the sale should pass the title without any restriction on the right of the buyer to resell as it might choose. As has been pointed out in prior cases, there is nothing in the Anti-Trust Act which invalidates such a collateral contract or relieves the buyer from his obligation under it. Connolly v. Union Sewer Pipe Co., 184 U. S. 540, 550–552 [22 S. Ct. 431, 46 L. Ed. 679]; Continental Wall Paper Co. v. Voight, 212 U. S. 227, 257–259 [29 S. Ct. 280, 53 L. Ed. 486]; Wilder Manufacturing Co. v. Corn Products Co., 236 U. S. 165, 177 [35 S. Ct. 398, 59 L. Ed. 520, Ann Cas. 1916A, 118]. It is only where the invalidity is inherent in the contract that the act may be interposed as a defense. With that exception the remedies which the act provides for violations of it are exclusive. Wilder Manufacturing Co. v. Corn Products Co., supra, 172, 175; Paine Lumber Co. v. Neal, 244 U. S. 459, 471 [37 S. Ct. 718, 61 L. Ed. 1256]; Geddes v. Anaconda Mining Co., 254 U. S. 590, 593 [41 S. Ct. 209, 65 L. Ed. 425]."

The reasoning of the court in Wilder Manufacturing Co. v. Corn Products Company, supra, precludes the defendant from pleading the Massachusetts statute of 1909 as a defense in this action. In view of this conclusion it is unnecessary to pass upon the constitutionality of the act.

[18] There is no merit in the claim made by the defendant that the contracts for future delivery at a fixed price are illegal as tending to unreasonably increase the price of sugar. See Small Company v. American Sugar Refining Company, supra. We agree with the plaintiff therefore that the matters set forth in the paragraphs, demurrers to which were sustained, do not constitute legal defenses to this action.

[19] But the defendant also says that, if it entered into valid contracts with the plaintiff, the plaintiff cannot recover on them, because the written orders signed by it do not satisfy the requirements of the statute of frauds of Maine or of Massachusetts, the provisions of which, for the purposes of this case, are substantially alike. Defendant's contention is that the signed memoranda are too indefinite and uncertain in respect to the price to be paid for the sugar purchased. But here again the defendant is confronted with decisions of the federal courts, in which this precise question has been determined adversely to defendant's contention. These decisions established the proposition that evi-

dence may be received to show a general custom, or usage, prevailing in the sugar trade, and that, when this custom is incorporated into the contract, the price becomes definite and certain. Again, the defendant has unsuccessfully attempted to distinguish the case at bar from these unfavorable decisions by stressing comparatively unimportant bits of testimony, given by the plaintiff's witnesses, regarding this custom or usage. The evidence, however, leaves these facts beyond controversy, namely, that there is a well-established and well-recognized custom in the sugar trade to the effect that wholesalers or refiners of sugar, selling in large quantities, adopt as a unit of sale a barrel of fine granulated sugar weighing approximately 350 pounds, and, when the buyer contracts for a definite number of "barrels or equivalent," he understands, as does the seller, that, if other grades or packages are accepted under the contract, the price will go above or below the basis price named in the contract, according to differentials established in the trade. These differentials are rarely changed, and those in force at the time of the contract govern. It is therefore always possible to accurately determine what price the buyer has agreed to pay for sugar taken under the contract if the basis price is stated. The defendant was familiar with this custom and knew that its contracts were made with reference to it.

That such contracts, when explained by such trade custom, are sufficiently definite to meet the demands of the statute of frauds, has been held in this circuit in Whitman & Co. v. Namquit Worsted Co. (D. C.) 206 F. 549, affirmed in (C. C. A.) 221 F. 49, and in other jurisdictions in Franklin Sugar Refining Co. v. Egerton (C. C. A.) 288 F. 698, American Sugar Refining Co. v. Colvin Atwell & Co. (D. C.) 286 F. 685, Brown & Hackney, Inc., v. Rushville Furniture Co. (C. C. A.) 285 F. 376, Straesser-Arnold Co. v. Franklin Sugar Refining Co., 8 F.(2d) 601 (decided May 26, 1925).

We see no occasion for disapproving either the reasoning or the conclusion of these cases, so far as they relate to the application of the statute of frauds. We find no error in the rulings of the trial judge upon that issue.

[20] In the next defense to be considered, the defendant concedes the existence of valid enforceable contracts, but seeks to avoid liability by alleging a failure on the part of the plaintiff to deliver or tender delivery of 500 barrels of sugar on or before September 30, 1920, or within a reasonable time thereafter. On the record, the plaintiff must admit that it did not within that time, or at any time thereafter, deliver or tender delivery of any of the 500 barrels, and the question raised by this defense is whether the plaintiff was excused from so doing by the conduct of the defendant, including its failure to furnish assortments as provided for in the contract. It appears beyond dispute that the defendant delayed in furnishing assortments for the sugar purchased on the orders for July and August shipments; 122 barrels on the July order were delivered on defendant's instructions in August, and 400 barrels of the August contracts were so delivered between August 20 and November 5, 1920. It is clear, also, that after the decline in the price of sugar the defendant made known to the plaintiff its desire to spread delivery over a longer period than the contracts called for and to buy other sugars at the market price. It aimed thereby to minimize its losses. The plaintiff acquiesced in this plan. Deliveries after the contract period were accepted by the defendant, and the plaintiff had no reason for believing that the defendant would not request deliveries in like manner on the September contracts. It was not until November 5, 1920, that the defendant first intimated that it did not intend to send in assortments for the September sugar.

It may be that the question of waiver of tender on the part of the defendant, or of waiver on the part of the plaintiff, of its rights to insist upon earlier specifications, were for the jury under proper instructions, especially as the evidence is conflicting as to what was said and done by the respective parties. We are not called upon to decide this question, because, quite apart from any question of waiver or estoppel, the trial judge was right in ruling, as a matter of law, that no tender was necessary. As we construe the express terms of the contract, they imposed a duty upon the defendant to act before it could put the plaintiff in default for nondelivery. The pertinent provisions of the contract are:

"Assortment to be furnished to seller by buyer before September 1, 1920, but subject to such substitutions as seller may find necessary to make. In event assortment is not furnished promptly, seller reserves right to ship such grades as it has available at time of shipment. Delivery to be during September or as soon thereafter as is possible, and buyer will accept delivery when made by seller. Seller is to have option of making delivery from any of its refineries. All

transportation charges to be for the account of buyer."

The courts in other jurisdictions have not been in full accord as to the legal effect of these provisions. The opinion which commends itself to our judgment imparts to these provisions an obligation on the buyer to furnish assortments before the seller is obliged to deliver or tender delivery; that the failure of the defendant to furnish assortments excused the plaintiff from any obligation to tender delivery. This is the view expressed in a recent well-considered opinion of the Supreme Court of Errors of the state of Connecticut in American Sugar Refining Co. v. Blake et al. (decided April 3, 1925, overruling the lower court). In the course of the opinion the court states:

"We are of the opinion that the contracts do not confer on the buyer a mere privilege of furnishing assortments, which he may or may not exercise at will, and the clause in question is in form and in substance an obligatory covenant to furnish assortments, upon which the seller's covenant to deliver is dependent in order of performance. It follows that the seller's reserved right to ship available grades in case assortment is not furnished promptly is in effect, as it is in form, 'a privilege and not a duty.'"

The construction put upon the clause in question by this Connecticut court is in accord with the construction placed upon similar clauses in other jurisdictions. Whitman & Company v. Namquit Worsted Co., supra; Hinckley v. Pittsburgh Bessemer Steel Co., 121 U. S. 264, 7 S. Ct. 875, 30 L. Ed. 967; Franklin Sugar Refining Co. v. Hanscom Bros., 30 Pa. Dist. R. 501.

[21] Thus far we have dealt only with those assignments of error relating to the several defenses in which the defendant has denied liability. There are many other assignments of error which relate to damages and to the admission and exclusion of evidence. A brief reference will be made to two of these assignments. At the trial in the District Court the judge instructed the jury that in assessing damages they should compute the same on the basis of 500 barrels of fine granulated sugar, weighing 350 pounds each, and that interest at the rate of 6 per cent. per annum from the date of breach should be added. These instructions the defendant contends were erroneous. By the terms of the contracts defendant was required to take and pay for 500 barrels of fine granulated sugar, in bulk, in barrels, having an average weight of 350 pounds, but it had the option to specify other kinds, grades, and packages which would be the equivalent of that amount. Some of this sugar was sold in barrels weighing less than 350 pounds each. Powdered sugar and cube sugar are examples. The defendant feels aggrieved because the District Judge refused to follow the state court of Pennsylvania in Franklin Sugar Refining Co. v. Howell, 274 Pa. 190, 118 A. 109, and the Circuit Court of Appeals in the Fourth Circuit in Franklin Sugar Refining Co. v. Egerton Bros., supra, where the so-called "least onerous" rule was applied in suits upon similar contracts, and where it was held that damages should be assessed on the basis of barrels of sugar other than fine granulated, the average weight of which was shown to be substantially less than the average weight of fine granulated.

When we examine these cases closely, we find that in both of them the court proceeded on the assumption that the defendant had a right under the contract to demand and receive the full amount purchased in sugar of lighter weight such as powdered or cube sugar. In the former case the question was considered on pleadings which alleged affirmatively that the defendant had the right to select barrels, the contents of which weighed 240 pounds per barrel, and in the latter case the court remarks that there was no proof that the plaintiff did not have available sufficient barrels of sugar of the lighter weight.

The record puts beyond controversy the fact that the requirements of the sugar trade did not call for, and the plaintiff did not produce, powdered and cube sugar in sufficient quantities to enable it to fill orders in these kinds of sugars only. The undisputed evidence before the trial court was to the effect that only about 3 per cent. of the plaintiff's total production consisted of these kinds of sugars that were sold in lighter barrels. Here there was proof, not only that the defendant, over a period of several years, had taken only a small proportion of its orders in powdered sugar, or in sugar which would weigh less than the average weight of fine granulated sugar, in barrels, but that the plaintiff did not have available these lighter weight sugars in sufficient quantities to satisfy defendant's contracts, if it had elected to specify them. We entertain serious doubts respecting the right of the defendant to require the plaintiff to fill the entire order with sugars of the lighter weight.

Moreover, we think there is considerable merit in the suggestion of the plaintiff that the equivalent of a barrel of fine granulated

sugar means an equivalent in weight. Judge Peters, in his charge to the jury, said:

"In this case no assortments were furnished, and the defendant has now lost its right to the choice of any particular grade or quality. Having lost the right to specify, he cannot have the right in assessing damages to the specification most favorable to him."

This statement would seem to be abundantly supported by the authorities. Williston on Contracts (1920) § 1407; Wheeler v. New Brunswick, etc., 115 U. S. 29, 5 S. Ct. 1061, 29 L. Ed. 341; Marlor v. Texas & P. R. Co. (C. C.) 21 F. 383.

[22] As to interest on the amount of damages awarded, we think this case is not controlled by the recent decision in this circuit in International Paper Co. v. Beacon Oil Co. (C. C. A.) 290 F. 45, for the reason that at the time of defendant's breach of its contract fine granulated sugar had a market value easily ascertainable and it would have been feasible for the defendant to compute plaintiff's damages if it had admitted liability and chosen to tender the amount thereof. This fact would seem to bring this case within the doctrine of those cases which have held that interest may be recovered in suits for unliquidated damages, "where it can be determined what amount is due either by mere computation or by computation in connection with established market values or other generally recognized standards." Robertson v. Miller (C. C. A.) 286 F. 503. See, also, Demotte v. Whybrow (C. C. A.) 263 F. 366; Great Northern Railway Co. v. P. & R. Coal & Iron Co., 242 F. 799, 155 C. C. A. 387; Namquit Worsted Co. v. Whitman & Co., supra; Childs v. Krey, 199 Mass. 352, 85 N. E. 442; Faber v. City of New York, 222 N. Y. 255, 118 N. E. 609.

In the last case the criterion is thus stated:

"The test is not whether the demand is liquidated. Was the plaintiff entitled to a certain sum? Should the defendant have paid it? Could the latter have determined what was due, either by computations alone or by computation in connection with established market values, or other generally recognized standards?"

In the case of International Paper Co. v. Beacon Oil Co., supra, Judge Anderson calls attention to the fact that the defendant in that case had no means of determining to what extent, if at all, it was in default; it could not have paid or tendered and thus stopped interest. This statement would not hold true in the case at bar.

Many other assignments of error relative to the admission and exclusion of evidence have been considered. Respecting these assignments, it is sufficient to say that we find no substantial error in the rulings of the court which appear to be consistent with the views expressed in this opinion.

The judgment of the District Court is affirmed, with costs in this court to the defendant in error.

BINGHAM, Circuit Judge (dissenting). I am unable to agree with the majority opinion, wherein it is held (1) that there was no evidence from which it could be found that it was agreed and understood between the parties at the time the defendant signed the orders for September deliveries, that they were not to become binding contracts until they were accepted in writing by the plaintiff; and (2) that if there was evidence from which the jury could find that the orders were not to become binding until the plaintiff had given written acceptances, no other conclusion could be drawn from the evidence than that the defendant later waived the requirement of written acceptances by taking sugars under other orders calling for July and August deliveries.

At the trial Mr. Laughlin, the defendant's president, gave the following testimony with regard to the question whether the plaintiff had agreed to give written acceptances:

"Q. Now, give us what conversation there was, as nearly as you can recall. A. I told him that I understood that that was part of the agreement; that I was to sign those papers, and I was to have the American Sugar Refinery's name on them to make them good.

"Q. You mean part of the agreement when you signed them? A. Yes, sir.

"Q. Well, now, what did you tell him— did you make any objection to their—well, just what did you say? A. His answer was that he had signed them. I said: 'Mr. Johnstone, you have signed four of them, and four of them you have not. And I do not believe you have any authority to sign any of them. You have only signed as salesman—'

"Q. What did he say? A. He said: 'I guess that is right. I don't think I have any authority to sign them.' I said: 'Well, then, I am entitled to, and I want and demand, the signature of the American Sugar Refining Company.'

"Q. Did you say anything further to

him? A. He told me he would get me confirmations. * * *

"Q. Well, was there any other conversation at that time? A. I repeated what I told him before.

"Q. About what? A. That it required their signature to hold them if sugar went up."

As to the question of waiver: The position of the majority of the court is that, because the defendant took deliveries of sugars under other orders calling for July and August deliveries, as to which there were no written acceptances, it waived, as a matter of law, the requirement of a written acceptance on the orders for September deliveries. This may have been evidence of waiver, but it does not follow that no other inference than that of waiver could be drawn from it, for, on that evidence, it was equally open to the jury to find that the defendant was willing to take the July and August sugars, even though it was not bound by contract to do so.