ARTHUR E. CHILDS & others *vs.* ARTHUR W. KREY & another.

Suffolk.    March 16, 1908. — June 16, 1908.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & SHELDON, JJ.

*Gas and Electric Light Commissioners. Statute. Fraud. Contract,* Performance and breach, Construction. *Interest.*

Under R. L. c. 109, § 26, providing that if, when the board of gas and electric light commissioners approves of an issue of new stock or bonds by a gas or electric light company, it determines that the fair structural value of the plant is less than its outstanding stock or debt, it may require the impairment of capital to be made good, that board is not given the power to require such impairment to be made good except as it makes such requirement a condition under which the new stock or bonds may be issued.

An electric light company at a stockholders' meeting voted to increase its capital stock. Upon application being made to the board of gas and electric light commissioners under R. L. c. 109, § 24, for its approval of the issue of new stock, that board approved of the issue and, under § 26, ordered that, the fair structural value of the plant appearing to be less than the company's outstanding stock and debt, the company should not declare nor pay any dividend upon its capital stock theretofore issued until at least $3,500 of the indebtedness of the company was cancelled out of its income. The order was not entered on the records of the corporation as required by § 24, the new stock never was issued and six semiannual dividends thereafter were paid on its stock theretofore issued by the corporation, and were reported by it to the board, who made no objection thereto. Thereafter an agent of persons who desired to purchase the capital stock and assets of the corporation from one who held all its capital stock, observing on the record book of the corporation the vote to increase its stock, asked the prospective seller about it, and was told that nothing had been done under the vote, but that the project had been given up; and thereupon the purchase was made. Subsequently the purchasers sought to have deducted from the amount agreed to be paid by them to the seller a sum equal to all of the dividends paid after the order of the board of gas and electric light commissioners was made, contending that the payments were made in violation of the order, and that the seller had made false representations as to the dividends. *Held,* that, the project as to the issue of additional stock having been abandoned, the order as to

payment of dividends was inoperative, the seller's statement was accurate, and the deduction sought should not be made.

As a part of a contract for the sale of all the capital stock of a corporation, the seller " guaranteed " that the liabilities of the company did not exceed by more than $100 a certain amount. In a suit to recover the amount of the purchase price, it appeared that the liabilities of the corporation were $523 more than the sum mentioned in the contract of sale, and the defendant contended that such sum should be deducted from the purchase price. *Held*, that $423 only should be deducted under the terms of the contract.

If in a suit for an accounting the plaintiff admits that he had agreed to pay the defendant a liquidated amount on a certain date, but seeks to have certain unliquidated sums deducted therefrom, and findings are made that the plaintiff is entitled to certain deductions, interest should be charged against the plaintiff on the liquidated debt from the date when he agreed to pay it, and interest from the date of the bringing of the suit should be allowed him on the amount of deduction awarded him.

BILL IN EQUITY, filed in the Supreme Judicial Court for the county of Suffolk July 15, 1907, as stated in the opinion.

The case was referred to a master, who filed a report to which the plaintiffs excepted. The exceptions were heard before *Morton*, J., who reserved the case for consideration by the full court.

*H. W. Ogden*, for the plaintiffs.

*M. S. Holbrook*, for the defendant Krey.

LORING, J. This is a bill in equity reserved for our consideration on the bill, answers, master's report and exceptions thereto.

The controversy grows out of a contract between the plaintiffs and the defendant Krey, dated January 31, 1907, whereby Krey sold to the plaintiffs all the stock of the Ayer Electric Light Company (amounting to $10,000) together with notes of the company held by Krey to the amount of $13,000. By article 3 of that contract Krey " guarantees that the liabilities of said Ayer Electric Light Company do not exceed by more than $100 the amount set forth in the statement of liabilities hereto attached," and by article 4 Krey further guarantees " that the amount of the gross income and the amount of bills receivable are as represented by said attached statement." Article 5 provides for the payment of $18,750, and the provision as to that is in substance as follows : The stock and notes (properly indorsed) are to be delivered to the plaintiffs " for the purposes of this agreement " ; " the property " is to be examined by the plaintiffs and accepted, if accepted, by February 15, 1907 ; upon delivery of the stock and

notes and acceptance of the property, $6,250 in cash is to be paid; another $6,250 on April 15, 1907; and the final payment of $6,250 on July 15, 1907. Article 6 provides that, on the plaintiffs' receiving the stock and notes, they are to take out new certificates of stock and deliver the new certificates and the notes (duly indorsed) to the other defendant here, the State Street Trust Company. Article 7 provides for a change in the personnel of the board of directors "upon receipt of the first payment." Article 8 provides that the State Street Trust Company shall hold the stock and notes " as collateral security for the full and complete performance of the obligations of this agreement," and the other articles of the agreement (namely, 9 and 10) deal with details not important in connection with the matters now in question.

The plaintiffs accepted the property, the first instalment was paid, the stock and notes were duly delivered and transferred to the plaintiffs and by them delivered, duly indorsed, to the State Street Trust Company, and the plaintiffs entered into and have since continued in control of the company. The second instalment was also paid when due.

On the day on which the third and last instalment was due, the plaintiffs filed this bill setting forth the above facts and alleging (1) that the liabilities were greater than the amount set forth in the statement by $466.44; (2) that the bills receivable were less than the amount set forth by $227.75; and (3) that the Ayer Electric Light Company had been ordered by the board of gas and electric light commissioners, on June 12, 1903, not to declare or pay any further dividends on its capital stock till at least $3,500 of its promissory notes then outstanding had been paid, and that, in violation of that order, dividends to the amount of $2,400 had been subsequently paid. Further, that the defendant Krey had falsely represented in effect that there was no such order in existence, and thereby became bound to repay to the company the $2,400. The plaintiff alleged in the bill of complaint that the plaintiffs had a right to offset the $466.44, $227.75, and the $2,400; he also alleged threats by Krey to have the stock sold if the instalment due on July 15 was not paid, and asked that the amount equitably due might be ascertained.

The master reported that the liabilities exceeded those stated by $523.70, and that there were four items for which the plaintiffs were entitled to a credit amounting in all to $216.81. He disallowed eight other items claimed by the plaintiffs and found that nothing was due on account of the order of the board of electric light commissioners and the representations of the defendant Krey in that connection. Under the terms of Krey's guarantee that the liabilities did not exceed the amount stated "by more than one hundred dollars," the master allowed as a set-off in that connection $423.70; he also allowed the other four items amounting to $216.81, in all, $640.51. He deducted this from the $6,250 due on July 15, 1907, and allowed interest on the balance from that day.

The plaintiffs have waived their exceptions to the finding of the master as to the eight items mentioned above. They now insist upon their exceptions to the finding as to the restitution of the $2,400, to the deduction of $100 from the $523.70, and to the ruling of the master as to interest.

1. The facts as to the $2,400 of dividends are as follows:

On February 20, 1903, the stockholders of the Ayer Electric Light Company voted " to issue $20,000 additional capital stock, the proceeds to be applied to the payment of the company's net indebtedness, and to the purchase of a new generator, engine, boiler, and the necessary fittings." On an application to the board of gas and electric light commissioners for leave to increase the stock as voted, that board made an order on June 12, 1903. That order begins by a finding that the indebtedness of the company is $8,500, and the cost of the new construction $15,000. It then approves the issue of two hundred shares, the proceeds of fifty shares to be applied " to the payment of an equal amount of the promissory notes of the company now outstanding," and the proceeds of the other one hundred and fifty shares to the new construction. The order then fixes at par the price at which the new shares are to be issued, and ends with these words: "And it appearing that the fair structural value of the plant of said company is less than its outstanding stock and debt, Ordered further, That said Ayer Electric Light Company shall not declare nor pay any dividend upon its capital stock heretofore issued until at least $3,500 of the company's

promissory notes now outstanding shall have been paid and cancelled out of income or until otherwise ordered by the board."

This order was not entered on the records of the corporation as required by R. L. c. 109, § 24 ; the company took no steps to issue the new shares, and continued to pay dividends on its old stock.

An agent of the plaintiffs in making the examination of the property specified in the contract found on the stockholders' records a record of the vote to increase the capital stock, and " asked Krey about the vote. Krey told him that nothing had been done under it, and that the project of rebuilding and adding to the plant had been given up."

The plaintiffs' contention is that the order of the board made on June 12, 1903, not to pay further dividends was an independent order, and that the company is now bound to restore to its treasury the $2,400 so paid out. Further that Krey, having made a false representation as to the matter, is under an obligation to make his representation good.

We are of opinion however that Mr. Krey's statement was accurately true.

The only power which the board of gas and electric light commissioners had in 1903 to direct an electric light company to make good an impairment in its capital stock was that given by R. L. c. 109, § 26.

R. L. c. 109, § 26, does not give the board power to enter an independent order directing an impairment of capital to be made good. The only power given in this connection to the board is to require an impairment of capital to be made good as part of an order approving an issue of new stock or bonds.

The section in terms provides: " If where the board of gas and electric light commissioners approves an issue of new stock or bonds," it determines that the fair structural value of the plant is less than its outstanding stock and debt, it may require the impairment of capital to be made good. That does not give the board power to order an impairment of capital made good apart from an order approving an issue of new stock or bonds. The object of the act manifestly was to enable the board to see to it that the old stock, for example, was worth par before new stock to be issued at par was approved.

This construction of the statute has been adopted by the board in the case of the electric light company now in question. The order for the issue of new stock was made on June 12, 1903. On the thirtieth day of the same month a dividend of one and one half per cent was declared and paid, and dividends of three per cent were declared and paid in December of that year, in June, 1904, and in January and June, 1905, while in February and June, 1906, and in January, 1907, dividends of three and one half per cent were declared and paid. The company reported to the board each and all of these dividends. No objection to this course of business was made by the board, manifestly because it considered that the order (as it was and had to be) was a part of the approval of the issue of new stock, and that the project of issuing new stock had been abandoned by the company.

Not only did the electric light company pay these dividends, but as we have said it did not enter the order upon its records, as it was bound to do if it did not abandon the project. See R. L. c. 109, § 24. We are of opinion that before February 4, 1907, when or about when the defendant Krey told the plaintiffs that the project " had been given up," it had been abandoned, and that statement was accurately true.

It follows that the tenth, eleventh, twelfth and thirteenth exceptions to the master's report must be overruled.

2. The guarantee given by the defendant Krey was not a guarantee that the liabilities were correctly stated in case they did not exceed by more than $100 the amount set forth in the statement. It was a guarantee " that the liabilities of said Ayer Electric Light Company do not exceed by more than $100 the amount set forth." The ruling of the master was correct that the defendant owes the plaintiffs on this guarantee $423.70, being $523.70 (the amount of the excess of liabilities over that set forth) less $100; and the first exception to the master's report must be overruled.

3. The only other exception not waived by the plaintiff is that to the ruling of the master " that the defendant Krey is entitled to interest on the balance due him from the plaintiffs on July 15, 1907." In our opinion that exception also must be overruled.

The plaintiffs' contention is that the interest in the case at

bar should be dealt with as in case of an unliquidated open account, and that under that rule no interest should be allowed until the "balance has been determined by this proceeding."

We think that they are wrong in both these contentions.

The amount due from the plaintiffs was a liquidated amount due at a time fixed, namely $6,250, due July 15, 1907. What the plaintiffs sought to do by bringing the bill in equity now before us was to set off against this liquidated claim the unliquidated sums due them on cross claims. In such a case interest is due from the plaintiff on the liquidated sum from the date at which it was payable, and interest is to be paid by the defendant on the cross claims from the date of the writ. The matter of interest due on the liquidated claim in such a case is not fixed by the rule in case of unliquidated claims.

But the plaintiffs are wrong as to what the rule is as to interest in case of unliquidated claims. It is not (as they assume) that interest is allowed only from the date when the balance due is ascertained in the proceeding. Interest in such cases is allowed from the date of the writ starting those proceedings. This is laid down in the cases cited by the plaintiffs' counsel *Palmer* v. *Stockwell*, 9 Gray, 237. *Stimpson* v. *Green*, 13 Allen. 326. *Freeman* v. *Freeman*, 142 Mass. 98, 105.

It happens that the date of the bill in equity and the date when the $6,250 was due are the same, namely, July 15, 1907.

The tenth exception to the master's report must be overruled.

It follows that a decree should be entered overruling all the exceptions taken to the master's report and directing the defendant the State Street Trust Company to deliver to the plaintiffs the stocks and bonds now held by it upon the payment by the plaintiffs to the defendant Krey of $5,609.49 with interest at six per cent from July 15, 1907, to the date of payment, the State Street Trust Company to recover its taxable costs from the plaintiffs. No costs should be allowed the plaintiffs or the defendant Krey.

*So ordered.*