**SCA INTERNATIONAL, INC., Plaintiff,**

v.

**GARFIELD & ROSEN, INC., Defendant.**

**Civ. A. No. 67–688–J.**

United States District Court,
D. Massachusetts.

Sept. 28, 1971.

Stephen A. Hopkins, Sherburne, Powers & Needham, Boston, Mass., for plaintiff.

Aaron J. Bronstein, Robert J. Cotton, Morris Michelson, Boston, Mass., for defendant.

## FINDINGS OF FACT and CONCLUSIONS OF LAW

JULIAN, Chief Judge.

The plaintiff, SCA International, Inc. (hereinafter referred to as "SCA"), is an Ohio corporation having its principal place of business in Columbus, Ohio. The defendant, Garfield & Rosen, Inc. (hereinafter "G&R"), is a Massachusetts corporation having its principal place of business in Boston, Massachusetts.

SCA brings this action to recover money which it claims is owed by G&R for quantities of shoes sold and delivered by SCA to G&R. The defendant denies liability and asserts a counterclaim against SCA for damages allegedly caused by SCA's failure to deliver other quantities of shoes it had agreed to sell and deliver to G&R.

This Court has jurisdiction.

SCA purchases shoes from Italian manufacturers, imports them into the United States, and sells them to major wholesalers and shoe-store chains. G&R is engaged in the shoe business in Massachusetts as a wholesaler and sells to retailers.

SCA is a subsidiary of the Shoe Corporation of America. G&R has been doing business with the plaintiff and its parent corporation for more than thirty years.

### Plaintiff's Claim

The claim of SCA is for the balance due on an open account for shoes delivered by SCA to G&R. As of March 29, 1969, the records of SCA, kept in the usual and ordinary course of business, showed a balance owed to it by G&R of $11,659.78. (Exh. 18.) The books of account of G&R kept in the usual and ordinary course of business show the balance to be $5,084.08. (Exh. 19.) The difference between the two balances is explained as follows:

The figure of $11,659.78 in Exhibit 18 includes $2,231.25 which SCA claims as interest charges. The records of G&R contain no interest charges. G&R takes the position that no interest is due and that interest, if any, should be figured only from the date of the complaint on whatever balance, if any, is found to be owing by G&R to SCA after G&R's counterclaim is taken into consideration. Exclusive of the interest charges, the balance claimed by SCA is $9,428.53.

SCA agrees that a credit of $619.85 for defective shoes returned in February 1967 and a credit of $10.13 in December 1966 were allowed by SCA and were properly taken on the books of G&R as of those dates, and should have been credited to G&R's account on the books of SCA as of those dates. These two credits total $629.98 and reduce SCA's claim, aside from interest, to $8,798.55. The following further deductions must be made from this balance: (a) a credit of $63.69 allowed by SCA but not reflected in G&R's books; (b) a charge of $78.49 made by SCA which the parties agree is to be eliminated as immaterial; and (c) freight charges of $177.88 which SCA has claimed but has failed to prove. These three items total $320.06 and reduce SCA's claim to $8,478.49, exclusive of its claim for interest.

G&R's accounts payable ledger (Exh. 19) shows certain credits for allegedly defective shoes returned to SCA, which credits do not appear on SCA's statement (Exh. 18). These claimed credits are as follows:

(1) a credit of $836.82 for allegedly defective shoes G&R attempted to return on August 2, 1967. (See Exhs. 19 and 7.)

(2) a credit for $853.55 for allegedly defective shoes G&R attempted to return on August 25, 1967. (See Exhs. 19 and 8.)

(3) a credit of $836.70 for allegedly defective shoes G&R attempted to return on August 28, 1967. (See Exhs. 19 and 9.)

(4) a credit of $514.42 for allegedly defective shoes G&R attempted to return on September 20, 1967. (See Exhs. 19 and 10.)

(5) a credit of $274.87 for allegedly defective shoes G&R attempted to return on November 16, 1967. (See Exhs. 19 and 11.)

(6) a credit of $141.74 for allegedly defective shoes G&R attemped to return on March 11, 1968. (See Exhs. 19 and 12.)

The foregoing six items total $3,458.10.

The bulk of shoes which G&R claims were defective and for which it claims credit, as set forth in subparagraphs (1) through (6) above, were shipped to G&R before the end of December 1966, and as to each of these claims for credit, SCA did not then and does not now allow the credits on the grounds that the returns were made after the lapse of more than a reasonable time after the receipt of goods by G&R,[1] and allegedly were not authorized by SCA in accordance with procedures prescribed for the return of merchandise.

The Court finds that the shoes referred to in subparagraphs (1) through (6) had been delivered by SCA to G&R from about six to nine months before the dates of their attempted return. G&R had had a reasonable opportunity to inspect them after receiving them from SCA. The Court finds that G&R failed to reject or return the shoes within a reasonable time after their delivery and seasonably to notify SCA of the rejections. G&R also failed to notify SCA of the defects in the shoes within a reasonable time after G&R by the exercise of due diligence should have discovered the claimed defective condition of the shoes. The Court further finds that SCA did not give G&R permission to return the shoes referred to in subparagraphs (1) through (6). The Court further finds that G&R failed to follow the procedure established by SCA for the return of shoes claimed to be defective.

All of SCA's invoices to G&R contained the following provision:

"No returns will be accepted unless authorized by us in writing."

See, for example, Exhibit 41. G&R's invoices to its own customers contained a similar provision:

"No merchandise on this invoice can be returned without first obtaining our written consent."

See, for example, Exhibits 33 through 37.

On March 16, 1967, SCA wrote to G&R (see Exh. 42) concerning four cases of unauthorized returns which G&R had sent to SCA's warehouse. The letter stated:

". . . [T]his will be the last time any unauthorized returns will be

1. The following are the pertinent provisions of the Uniform Commercial Code, Mass. G.L. c. 106:

"§ 2-602. (1) Rejection of goods must be within a reasonable time after their delivery or tender. It is ineffective unless the buyer seasonably notifies the seller. . . ."

* * * * *

"§ 2-605. (1) The buyer's failure to state in connection with rejection a particular defect which is ascertainable by reasonable inspection precludes him from relying on the unstated defect to justify rejection or to establish breach

(a) where the seller could have cured it if stated seasonably; or

(b) between merchants when the seller has after rejection made a request in writing for a full and final written statement of all defects on which the buyer proposes to rely.

(2) Payment against documents made without reservation of rights precludes recovery of the payment for defects apparent on the face of the documents."

* * * * *

"§ 2-606. (1) Acceptance of goods occurs when the buyer

(a) after a reasonable opportunity to inspect the goods signifies to the seller that the goods are conforming or that he will take or retain them in spite of their nonconformity; or

(b) fails to make an effective rejection (subsection (1) of section 2-602), but such acceptance does not occur until the buyer has had a reasonable opportunity to inspect them; . . ."

* * * * *

"§ 2-607. . . . (3) Where a tender has been accepted

(a) the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy; . . ."

* * * * *

accepted by our warehouse. . . . In the future our *Returned Merchandise Procedure,* a copy of which I am enclosing for your use, must be followed. Absolutely, no returns will be accepted without written authorization signed by Mr. Leo Kaye of our New York office."

A copy of the procedure is attached to Exhibit 42.

On June 22, 1967, SCA wrote to G&R concerning the return of shoes by the latter without prior authorization and insisted that G&R follow the procedure of prior authorization, stating, "We will not accept unauthorized returns." G&R replied (Exh. 54), stating in part,

"In the future be certain that we shall request authorization prior to making any of these returns."

I find on all the evidence relating to this issue that the procedure for returns established by SCA was reasonable and not in any way inconsistent with the contractual relations existing between the parties. It was consistent, however, with the practice adopted by both parties. The procedure was reasonably necessary to facilitate the orderly performance by the parties of their mutual obligations under their contracts.

■ For the reasons stated, G&R has failed to establish that it is entitled to any of the six claimed credits for allegedly defective shoes. Those credits are therefore disallowed. Accordingly, the Court finds that, except for G&R's counterclaim, SCA has a valid claim against G&R for $8,478.49, exclusive of interest.

### SCA'S Claim for Interest

The plaintiff claims interest on the unpaid monthly balances due from the defendant.

The terms of sale on all invoices past due were "net 90 days."

■ The Court finds that the amount due from the defendant to the plaintiff as of April 30, 1967, was $51,431.03. This is the amount shown by G&R's records. (Exh. 19.) It was a liquidated amount due at a time fixed. The plaintiff has accepted this figure as the starting balance for the computation of interest. (See plaintiff's brief at page 18.)

The plaintiff is entitled to interest at the rate of 6% per annum on the unpaid balances from April 30, 1967, to September 10, 1967, the day before the plaintiff commenced this action. Childs v. Krey, 199 Mass. 352, 357–358, 85 N.E. 442. The plaintiff, however, is not entitled to compound interest as claimed in its brief. (See plaintiff's brief, appendix A.)

It is ordered that plaintiff's counsel compute the interest due in accordance with this opinion and that such computation be filed with the Court within ten days after date hereof.

It is ordered that defendant's counsel review the computation for accuracy and report his suggestions for corrections, if any, within ten days thereafter.

On the plaintiff's claim, judgment will be entered for the plaintiff in the amount of $8,478.49, plus such interest on defendant's unpaid balances as shall be determined in the manner above stated.

### Defendant's Counterclaim

In July 1966, SCA accepted Order Nos. 3045 and 3070 from G&R for shoes. Those orders are set forth in 22 sheets and are dated July 5, 1966. (Exhibit 1.) The orders were for delivery "as ready as of December 1, 1966." The phrase "as ready as of December 1, 1966," meant that delivery was to be made on or before December 1, 1966.

The defendant knew that the shoes were to be manufactured in Italy, in factories situated in Florence and surroundings. SCA knew that the shoes were intended by G&R for the 1967 Spring and Summer trade.

Large quantities of the shoes ordered were delivered in accordance with the terms of the orders. The shoes listed in Exhibit 3, however, were not delivered because manufacturing operations were

disrupted by unprecedented floods which occurred in the region of Florence in the early part of November 1966. The factories in which the shoes were being manufactured were damaged, as were some of the necessary supplies of leather, linings, soles and inner soles. These conditions made impossible the completion and delivery of the shoes within the time stipulated in the orders.

SCA thereupon notified G&R that delivery of certain styles of shoes under the two orders would be delayed. G&R answered by letter dated November 8, 1966 (Exh. 15), and letter of November 30, 1966 (Exh. 16). As a result, SCA sent its Mr. Leo Kaye to investigate the situation.

The factories in which the shoes covered by Order Nos. 3045 and 3070 were to be manufactured were able to resume limited production in the early part of December 1966, but because of lack of materials and workmen did not attain full production until sometime in March 1967.

On December 9, 1966, Mr. Kaye on behalf of SCA wrote (Exh. 3) to G&R that shoes to fill certain of the orders of G&R would be shipped from Italy at stated dates in December 1966 and in February and March 1967. G&R in its reply, dated December 16, 1966 (Exh. 20), stated that the new dates were satisfactory.

The 9200 and 7300 lines of shoes were to be made specially for G&R and were to meet specific samples.

The counterclaim of G&R is "for loss of profits including its incurred expenses on (a) shoes SCA allegedly failed to deliver within the stipulated time, and (b) the delivery of defective shoes." (Exh. X.)

The claim of G&R for damages for failure to deliver within the stipulated time concerns two categories of shoes:

(a) 555 cases or 19,980 pairs of shoes. Shoes are delivered in cases. Each case contains 36 pairs of shoes. The 555 cases involve 13 styles: 9208, 9210, 9212, 9214, 9216, 9218, 9220, 9222, 9230, 9234, 9236, 9238, and 9240. These style numbers appear at pages 10 to 17 of Exhibit 1, in Exhibit 15, and at pages 33 to 35 of the catalogue of G&R entitled, "New Shoe Styles for Spring and Summer 1967", which was issued in January 1967 (Exh. 21). By letter of April 13, 1967 (Exh. 22), SCA advised G&R that it could not ship these styles from Italy before May 15 to May 30. G&R replied by letters of April 17, 1967 (Exh. 23), and April 18, 1967 (Exh. 24), canceling the orders and claiming loss of profits. The purchase price as stated in Exhibit 1 was $2.10 a pair for shoes in these styles.

G&R claims that it received orders for all these shoes at $2.60 a pair and that it paid commissions to salesmen for securing these orders. The Court finds that G&R has failed to prove by credible evidence that it had received any orders for shoes in category (a) above. The Court further finds that G&R has failed to prove by credible evidence that it paid commissions to salesmen for securing any orders for these shoes.

(b) 300 cases or 10,800 pairs of shoes. These cases involved styles 7320, 7322, 7324, and 7326. They are listed on pages 20 and 21 of Exhibit 1. They are shown on page 30 of Exhibit 21. The original price to G&R on these shoes was $1.62 a pair, but on January 9, 1967 (Exh. 27), the price was increased to $1.97 a pair. On January 13, 1967, (Exh. 28), SCA informed G&R that the shipment date would be May 10, 1967. By letter of January 17, 1967 (Exh. 29), G&R answered that delivery would be acceptable provided the shoes reached Boston by May 25, 1967. Thereafter, by letter of April 13, 1967, SCA informed G&R that shipment would not be made before May 15 to May 30, 1967. (Exh. 22, third paragraph.) It normally took twenty-one days to bring shoes from Italy into Boston, namely, fourteen days for transportation by ship and seven days to clear customs. This meant that the shoes might not reach Boston until the latter part of June. This would have been too late for the season for which they were

intended. G&R thereupon canceled the orders. (See Exh. 25.)[2]

G&R claims that it received orders for all these shoes at $2.40 a pair and that it paid commissions thereon to its salesmen.

The Court finds that G&R has failed to prove by credible evidence that it had received orders for any shoes in category (b). The Court also finds that G&R has failed to prove by credible evidence that it paid commissions to salesmen on any orders for these shoes.

After the delivery dates for the shoes in question were modified by agreement, there was no occurrence of any new contingency, the non-occurrence of which was a basic assumption on which the contract was made.

The modifications fixing a new date for the delivery of the shoes in the 9200 line and the 7300 line were made by the plaintiff after an investigation by the plaintiff through its own representative who was sent to Italy for that purpose. SCA knew that shoes shipped from Italy on May 30, 1967, would arrive in the United States too late for delivery to retailers for the 1967 Spring and Summer trade. Shoes of the kind and style called for by Order Nos. 3045 and 3070 were not available in the United States in April of 1967.

The defendant also claims loss of profits because of certain defective shoes as follows:

(1) Styles 9204, 9206, and 9207 were canceled because the workmanship was inferior. (Exh. 32, letter of April 28, 1967, from SCA to G&R.) Each of these styles involved 900 pairs of shoes and

G&R claims under its counterclaim a loss of 50 cents a pair on the 2,700 total pairs of shoes, or a total sum of $1,350.

(2) Other shoes totalling over 96 cases, or 3,600 pairs of shoes, were returned because of inferior workmanship or defects. See Exhs. 7, 8, 9, 10, 11, and 12 totalling 1,888 pairs. Exhibits 33, 34, 35, 36, 37, and 38, which were allowed returns, total 1,673 pairs. G&R claims it lost a profit of 50 cents on each pair of these shoes, or $1,780.

■ The Court finds that G&R has failed to prove by credible evidence that it had received orders for any of the shoes referred to in the foregoing paragraphs (1) and (2). The Court further finds that G&R has failed to prove what its net profit would have been even if it be assumed that the shoes would have been sold had they not been defective or of inferior workmanship. G&R has failed to produce credible evidence sufficient to prove what damage it sustained.

In its letter to SCA dated March 10, 1967 (Exh. 5), G&R stated:

"The samples on these 900 cases were sent to us and approved and these samples distributed to our salesmen throughout the country who sold these shoes. *Our records showing these sales would definitely stand up in any law court."* (Emphasis added.)

G&R, however, produced no purchase orders from retailers to whom it claims it made sales, and no records showing to whom the sales had been made, or the identity of the salesmen who made the sales.[3] It produced no records show-

---

2. Mass.G.L. c. 106, § 2–615:

    \*    \*    \*    \*    \*

"(a) Delay in delivery or non-delivery in whole or in part by a seller who complies with paragraphs (b) and (c) is not a breach of his duty under a contract for sale if performance as agreed has been made impracticable by the occurrence of a contingency the nonoccurrence of which was a basic assumption on which the contract was made . . . . .

    \*    \*    \*    \*    \*

"(c) The seller must notify the buyer seasonably that there will be delay . . . ."

3. The only record of commission payments produced by G&R related to a salesman named Judik. It was offered in evidence by the *plaintiff* and marked as Exhibit 53. It consisted of eleven sheets. One of the sheets was alluded to in the testimony. It covered the period from January to December *1966*. The only figures read into evidence showed gross sales for De-

ing the amounts of the commissions[4] paid or credited to the salesmen on the sales of the shoes which SCA had failed to deliver or of shoes that SCA had delivered but that were returned as defective. It produced no evidence of G&R's cost of doing business or of its net profit on the sales of similar shoes.

Mr. Rosen testified that the pertinent records had been either discarded or destroyed because they were no longer needed in the operation of G&R's business. No dependable secondary evidence of their contents was produced. None of the salesmen who allegedly had made the sales and none of the retailers from whom orders were allegedly received testified at the trial either in person or by deposition. The records in question would have been generated in the course of G&R's business during the period beginning July 5, 1966, when G&R placed its orders with SCA, and ending April 17, 1967, when G&R canceled the orders. (Exh. 23.) By letter dated March 6, 1967 (Exh. 4), SCA made demand on G&R for payment on its past due account. G&R replied to this demand on March 10, 1967. (Exh. 5.) On March 16, 1967, SCA wrote again (Exh. 6) stating that it expected a "complete settlement of this account by return mail." From this point on, the relations between the parties became strained and the issues litigated in this case were emerging. G&R could not reasonably have ruled out the possibility of litigation. SCA commenced the present action as early as September 11, 1967. Furthermore, it is far more probable than not that Messrs. Garfield and Rosen, who are substantial business men of long experience, were well aware of the importance of retaining business records for a reasonable period of time. There is no evidence that the records were discarded or destroyed by accident or through inadvertence. The reason that Mr. Rosen gave for the discarding or destruction of the records is not persuasive. The Court finds that the records either never existed, or, if they ever existed, were not preserved and produced because they would not have substantiated G&R's position on the issues to which they were relevant.

■ SCA failed to deliver the shoes within the new dates agreed upon by the parties. Such failure was without legal excuse or justification and constituted material breaches of the contracts by the plaintiff. The breaches were sufficiently substantial to justify the defendant's cancellation of the orders. SCA is liable to G&R for such breaches. G&R, however, has failed to prove what damage it sustained by reason of the breaches.[5]

The Court finds and rules that G&R is entitled to recover only nominal damages on all aspects of its counterclaim.

Judgment on the counterclaim will be entered for Garfield & Rosen, Inc., in the amount of One Dollar ($1.00).

---

cember totalling $2,242.55, less credits of $818.15 for returned defective shoes, leaving $1,424.40 as the net total sales for that month. A commission of 5% was allegedly paid to Judik on the net total sales. It was not shown that any of the shoes sold by Judik, or the shoes returned as defective, were shoes that had been purchased by G&R from SCA.

4. The witness Kaye testified to the existence of a custom of the trade concerning the payment of commissions to shoe salesmen. The defendant objected to this testimony. It was received *de bene.* The Court is not satisfied that the witness had sufficient personal knowledge of the existence of the custom to enable him to tes-

tify on the subject. The testimony has been disregarded by the Court.

5. Since the case was taken under advisement the Court has made several attempts to determine from all the credible evidence before it the probable damages sustained by the defendant by reason of the plaintiff's breaches. The Court has found the evidence relating to damages so fragmentary, meager and unreliable as to make it impossible to make a determination of damages with even a minimal degree of certainty. The burden was on the defendant to remove the question of damages from the realm of speculation. This the defendant failed to do.